## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

In re:                                          Chapter 7

MATTHEW R BUSKARD,                              Case No. 25-46017-tjt

    Debtor.                               Hon. Thomas J. Tucker

_____/

NORTH STAR PARTNERS, LLC,
a Michigan limited liability company,           Adv. Proc. No. 25-

    Plaintiff,

    v.

MATTHEW R BUSKARD, an individual,

    Defendant.

_____/

## <u>NON-DISCHARGE COMPLAINT</u>

Plaintiff North Star Partners, LLC, through counsel, for their Non-Discharge Complaint against Defendant Matthew R. Buskard, state as follows:

## <u>PARTIES, JURISDICTION, AND VENUE</u>

1.    Plaintiff North Star Partners, LLC is a Michigan limited liability company that conducts business in Michigan.

1

4925-1015-5631, v. 6

2. Defendant Matthew R. Buskard ("<u>Debtor</u>") commenced a Chapter 7 bankruptcy case on June 12, 2025 ("<u>Petition Date</u>") in this judicial district. [Case No. 25-46017-tjt].

3. Debtor is an individual who conducted business in and resided in Oakland County, Michigan as of the Petition Date.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I).

5. Plaintiff consents to entry of a final judgment or order of this Court.

6. This Court has jurisdiction over this proceeding under 28 U.S.C. § 157(b) and § 1334(a) and (b).

7. This is an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(f).

8. Venue is proper in this Court under 28 U.S.C. § 1409(a).

## General Allegations

9. Debtor has an ownership interest in the following entities (collectively, the "<u>Entities</u>"):

   a. Bobcat Bonnie's Enterprises, LLC, a Michigan limited liability company;

   b. 1800 Michigan Avenue LLC, a Michigan limited liability company;

4925-1015-5631, v. 6

c.   200 W. Michigan Avenue, a sole proprietorship or Michigan limited liability company;

d.   Bonnie's Toledo LLC, a sole proprietorship or Michigan limited liability company;

e.   Bobcat Bonnie's Grant Rapids LLC, a sole proprietorship;

f.   240 W 9 Mile Rd LLC, a Michigan limited liability company; and

g.   Bonnie's To Go LLC, a Michigan limited liability company.

10.   Debtor ran the day-to-day business operations of the Entities from their inception and at all times relevant to this Complaint.

11.   The Court entered the *Order Extending Time for Examination of the Debtor Under Fed. R. Bankr. P. 2004 and Extending the Deadlines to Object to Dischargeability of Debtor and to Discharge* ("Rule 2004 Order") on October 7, 2025.  [ECF No. 55].

12.   Pursuant to the Rule 2004 Order, Debtor was required to produce documents to Plaintiff and sit for a Rule 2004 examination on October 28, 2025.

13.   Debtor neither produced documents nor appeared at his Rule 2004 examination on October 28, 2025 in contravention of the Rule 2004 Order.

14.   On or about October 1, 2023, Debtor executed a Secured Promissory Note (the "Note") in the original principal amount of $170,000

3

(the "Monies") in favor of Plaintiff.  A copy of the Note is attached as **Exhibit 1**.

15.     To secure repayment of the Note, Debtor and the Entities (collectively, the "Grantors") executed a Security Agreement in favor of Plaintiff dated September 25, 2023 (the "Security Agreement").  A copy of the Security Agreement is attached as **Exhibit 2**.

16.     Under the Security Agreement, Debtor pledged as collateral all of his personal property then owned or existing thereafter and wherever located (collectively, the "Collateral").  (Exhibit 2)

17.     Plaintiff perfected its security interest in the Collateral.  Copies of the UCC Financing Statements are attached as **Exhibit 3**.

18.     The Note was a commercial loan to be used by the Debtor exclusively in connection with the operations of the Entities or to pay in full any outstanding indebtedness of the Entities that is secured by the Collateral.  (Ex. 1, ¶ 6(e)).

19.     On or about September 25, 2023, Debtor represented to Plaintiff in the Security Agreement that he wholly owned the Entities.  (Ex. 2, at 1).

20.     On or about August 21, 2025, Debtor represented under oath during his Section 341 Creditors' Hearing, a copy of the transcript of which

4

4925-1015-5631, v. 6

is attached as **Exhibit 4**, that he had partners or shareholders in the Entities, but Debtor did not specify which ones or who his partners or shareholders were. (Ex. 4, at 10).

21.    On or about September 25, 2023, Debtor represented to Plaintiff in the Security Agreement that he possessed personal property, including works of art, with a minimum value of approximately $450,000. (Ex. 2, ¶ 1.1).

22.    On or about August 21, 2025, Debtor represented under oath during his Section 341 Creditors' Hearing that the artwork he possesses has a value of less than $100. (Ex. 4, at 12).

23.    On or about August 21, 2025, Debtor denied ever owning personal property, including artwork, which has a value of $450,000. (*Id*. at 13).

24.    Debtor represented to Plaintiff that the Collateral was not subject to any other liens, claims, or encumbrances. (Ex. 2, ¶ 2.2(a)).

25.    Debtor represented that there were no suits or proceedings pending or, to his knowledge, threatened against or affecting Debtor or any of the Grantors. (Ex. 1, ¶ 5(a)).

26.    Debtor represented that the Grantors were in material compliance with all laws, regulations, rulings, orders, injunctions, decrees,

4925-1015-5631, v. 6

conditions, or other requirements applicable to or imposed upon Grantors and that Grantors had "paid all taxes which are now due and payable." (Ex. 1, ¶ 5(c)).

27.    Plaintiff would not have entered into agreements, including the Note and Security Agreement, with Debtor if it had known that (i) the Debtor did not wholly own the Entities; (ii) Debtor did not possess at least $450,000 worth of personal property; (iii) the Collateral was subject to any other liens, claims, or encumbrances; (iv) that there were suits or proceedings pending or threatened against or affecting Debtor or any of the Grantors; or (v) the Grantors were not in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions, or other requirements applicable to or imposed upon Grantors and that Grantors had not "paid all taxes which are now due and payable."

28.    As of the Petition Date, the debt owed to Plaintiff by Debtor was $127,538.62.  [Case 25-46017, Proof of Claim 14].

## **COUNT I – NON-DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(A)**

29.    Plaintiff incorporates each of the allegations in the preceding paragraphs.

30.    Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt for money, property, services, or an extension, renewal,

4925-1015-5631, v. 6

or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

31.     Debtor obtained money (including some or all of the Monies), property, services, or an extension of credit for his benefit or for the benefit of other business entities in which he maintained an ownership interest, by false pretenses, false representations, and/or actual fraud.

32.     Debtor used his position as an owner of the Entities to access the Monies and, in turn, misappropriate Monies for his own benefit and/or for the benefit of other companies in which Debtor held an ownership interest.

33.     Debtor knowingly and fraudulently represented to Plaintiff that he wholly owned the Entities.

34.     Debtor knowingly and fraudulently represented to Plaintiff that he possessed $450,000 worth of personal property, including but not limited to works of art.

35.     Debtor knowingly and fraudulently represented to Plaintiff that he would use the Monies for the day-to-day business operations of the Entities.

4925-1015-5631, v. 6

36.     Debtor knowingly and fraudulently represented to Plaintiff that there were no existing liens, claims, or encumbrances against the Collateral; there were no pre-existing judgments against Debtor and/or certain of the Grantors; and there were no tax liens against Debtor and/or some or all of the Entities.

37.     Debtor knew that some or all of these representations were false or made recklessly without knowledge of their truths.

38.     Alternatively, Debtor made these representations to Plaintiff recklessly, without regard to the truthfulness of the statement.

39.     Plaintiff reasonably acted in reliance upon Debtor's representations in deciding to extend the Monies in a commercial credit transaction to Debtor and the Entities.

40.     Plaintiff's reliance on Debtor's representations was justifiable under the circumstances given Debtor's roles with respect to the Entities.

41.     Debtor knowingly employed deceit, artifice, trick, or design involving direct and active operation of the mind to circumvent and cheat Plaintiff out of the Monies.

42.     On account of Debtor's actions, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in their favor and against Debtor, holding that Plaintiff's claim in

4925-1015-5631, v. 6

the amount of $127,538.62 against Debtor is non-dischargeable and award Plaintiff such additional relief that is just and equitable.

## COUNT II – NON-DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(B)

43.     Plaintiff incorporates its allegations in the preceding paragraphs.

44.     Count II is pled in the alternative to Count I and Count III.

45.     Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied, and that the debtor caused to be made or published with intent to deceive.  11 U.S.C. § 523(a)(2)(B).

46.     Debtor obtained the Monies from Plaintiff pursuant to an executed Note and Security Agreement.  (*See* Exhs. 1 & 2).

47.     Debtor is an insider with respect to the Entities.

48.     Debtor knowingly and fraudulently represented in the Security Agreement that he wholly owned each of the Entities, which was false at the time of such representation.

9

4925-1015-5631, v. 6

49.     Debtor knowingly and fraudulently represented in the Security Agreement that he possessed $450,000 worth of personal property, including but not limited to works of art, which was false at the time of such representation.

50.     Debtor knowingly and fraudulently represented in the Note that that the Collateral was not subject to any other liens, claims, or encumbrances, which was false at the time of such representation on account of pre-existing liens, claims, or encumbrances against the Collateral.

51.     Debtor knowingly and fraudulently represented in the Note that that there were no suits or proceedings pending or, to his knowledge, threatened against or affecting Debtor or any of the Grantors, which was false at the time of such representation on account of pre-existing suits or legal proceedings against or affecting Debtor and Grantors.

52.     Debtor knowingly and fraudulently represented in the Note that the Grantors were in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions, or other requirements applicable to or imposed upon Grantors and that Grantors had "paid all taxes which are now due and payable," which was false at the time of such representation on account of, among other things, unpaid taxes affecting Grantors.

53.     Debtor intended to deceive Plaintiff by using material misrepresentations concerning Debtor's or an insider's financial condition in connection with receiving the Monies from Plaintiff.

54.     Debtor knowingly induced Plaintiff to rely on the Debtor's written misrepresentations to obtain the Monies from Plaintiff.

55.     Plaintiff reasonably relied on the Debtor's misrepresentations at the time it extended the Monies to Debtor.

56.     Despite Debtor's misrepresentations, Plaintiff's reliance on Debtor's statements in writing was justifiable under the circumstances of the credit transaction between Plaintiff and Debtor.

57.     Debtor knowingly employed deceit, artifice, trick, or design involving direct and active operation of the mind to circumvent and cheat Plaintiff out of the Monies.

58.     On account of Debtor's actions, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in their favor and against Debtor, holding that Plaintiff's claim in the amount of $127,538.62 against Debtor is non-dischargeable and award Plaintiff such additional relief that is just and equitable.

4925-1015-5631, v. 6

## COUNT III – NON-DISCHARGE UNDER 11 U.S.C. § 523(a)(4)

59.    Plaintiff incorporates its allegations in the preceding paragraphs.

60.    Count III is pled in the alternative to Count I and Count II.

61.    Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for embezzlement.

62.    Debtor intentionally and wrongfully embezzled the Monies.

63.    Debtor appropriated the Monies for his own benefit by fraudulent intent or deceit, transferred or deposited those funds for means benefiting Debtor, and disbursed or used the funds without explanation of reason or purpose.

64.    On account of Debtor's actions, Plaintiff has been damaged.

65.    Plaintiff is entitled to a judgment of non-discharge for embezzlement against Debtor.

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in their favor and against Debtor, holding that Plaintiff's claim in the amount of $127,538.62 against Debtor is non-dischargeable and award Plaintiff such additional relief that is just and equitable.

4925-1015-5631, v. 6

Respectfully submitted,

Dated: November 13, 2025

By:   /s/ Anthony J. Kochis
     Anthony J. Kochis (P72020)
WOLFSON BOLTON KOCHIS PLLC
880 W Long Lake Rd., Ste 420
Troy, MI 48098
Telephone: (248) 247-7105
Facsimile: (248) 247-7099
Email: akochis@wolfsonbolton.com

13

4925-1015-5631, v. 6

## **EXHIBIT INDEX**

| Exhibit 1 | Note |
|-----------|------|
| Exhibit 2 | Security Agreement |
| Exhibit 3 | UCC Financing Statements |
| Exhibit 4 | Transcript of Section 341 Creditors' Meeting |

4925-1015-5631, v. 6

# EXHIBIT 1

*THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND LAWS UNLESS THE LENDER RECEIVES AN OPINION OF COUNSEL REASONABLY ACCEPTABLE TO IT THAT SUCH REGISTRATION IS NOT REQUIRED.*

*NEGOTIATION, ASSIGNMENT OR OTHER TRANSFER OF THIS NOTE IS PROHIBITED. SEE PARAGRAPH 10.*

## SECURED PROMISSORY NOTE

Loan Amount: $170,000.00                    Effective Date: October 1, 2023

       FOR VALUE RECEIVED, MATTHEW BUSKARD, a Michigan resident whose address is 24650 Westhampton Street, Oak Park, Michigan 48237 ("Borrower"), promises to pay to the order of NORTH STAR PARTNERS, L.L.C., a Michigan limited liability company, whose address is 40900 Woodward Avenue, Suite 350, Bloomfield Hills, Michigan 48304 ("Lender"), the principal sum of ONE HUNDRED SEVENTY THOUSAND AND NO/100 ($170,000.00) DOLLARS, with interest thereon as set forth herein, in lawful money of the United States of America.

       1.     <u>Commercial Transaction</u>. This Note is a commercial transaction pursuant to which Lender is lending money to Borrower for the purposes set forth in Paragraph 6(e) *(Loan Proceeds)* below.

       2.     <u>Interest: Repayment: Maturity</u>.

       (a)     The outstanding principal balance of this Note shall be due and payable on April 1, 2025 (the "Maturity Date").

       (b)     The outstanding and unpaid principal amount of this Note shall bear simple interest at twenty-five percent (25%) per annum. Interest shall accrue and be computed on the principal balance outstanding from time to time under this Note until paid in full. Interest shall be calculated for the actual number of days the principal is outstanding on the basis of a 360-day year.

       (c)     The outstanding principal balance of this Note, together with accrued interest, shall be paid in monthly installments commencing November 1, 2023, and continuing on the first day of each month (a "Monthly Installment") until this Note is paid in full or until the Maturity Date when the entire outstanding principal and accrued interest is due and payable, whichever occurs first. The amount of principal and interest payments are set forth on <u>Exhibit A</u> attached hereto. As shown on <u>Exhibit A</u>, monthly payments are based upon a three (3) year repayment schedule, with a balloon payment at maturity.

       (d)     If any payment is payable on a day other than a Business Day, such payment shall be extended to the next Business Day. The term "Business Day" means any day that Bank of America, N.A. is open for business.

4860-4866-1889, v. 3

(e)    Borrower may prepay this Note at any time and from time to time, whether in whole or in part, without Lender's prior written consent. Should Borrower prepay this Note at any time before April 1, 2024, Borrower shall pay a prepayment penalty of $2,250 (*i.e.,* 1.5% of $170,000). If Borrower makes a partial prepayment of this Note, Lender will make notation of such prepayment in its records. All prepayments shall be applied first to accrued but unpaid interest to the date of prepayment and then to principal, in inverse order of maturity.

3.    <u>Respecting Interest</u>. If the interest provisions result in an effective rate of interest which, for any period of time, exceeds the limit of any usury or other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied toward repayment of outstanding principal immediately upon receipt of such moneys by Lender with the same force and effect as if Borrower had specifically designated such extra sums to be so applied to principal and Lender had agreed to accept such extra payment(s) in repayment of the principal balance hereof. Notwithstanding the foregoing, however, Lender may at any time and from time to time elect, by written notice to Borrower, to reduce or limit the collection of any interest to such sums which shall not result in any payment of interest in excess of that lawfully collectible.

4.    <u>Security</u>. This Note is secured by, and the Lender is granted a security interest in certain of Borrower's assets (the "Collateral") pursuant to the terms and conditions of a Security Agreement executed by Borrower in favor of Lender on even date herewith (the "Security Agreement"), the terms and conditions of which are hereby incorporated herein by reference.

5.    <u>Representations and Warranties</u>. Borrower hereby represents and warrants to Lender as follows:

(a)    <u>Litigation</u>. There are no suits or proceedings pending or, to Borrower's knowledge, threatened against or affecting Borrower, Bobcat Bonnie's Enterprises, LLC, a Michigan limited liability company (the "Management Company"), 1800 Michigan Avenue LLC, a Michigan limited liability company (the "Michigan Avenue Restaurant"), 200 W Michigan Avenue, a sole proprietorship (the "Ypsilanti Restaurant"), Bonnie's Toledo LLC, a sole proprietorship (the "Toledo Restaurant"), Bobcat Bonnie's Grand Rapids LLC, a sole proprietorship (the "Grand Rapids Restaurant"), or 240 W 9 Mile Rd LLC, a Michigan limited liability company ("Bobcat Bonnie's Ferndale"), or Bonnie's To Go LLC, a Michigan limited liability company ("Bonnie's To Go Restaurant," and, together with Borrower, the Management Company, the Michigan Avenue Restaurant, the Ypsilanti Restaurant, the Toledo Restaurant, the Grand Rapids Restaurant, and Bobcat Bonnie's Ferndale, the "Borrower's Group") and no proceedings before any governmental body are pending or, to Borrower's knowledge, threatened against any member of the Borrower's Group.

(b)    <u>Business</u>. No Borrower's Group member is a party to or subject to any agreement or restriction that may have a material adverse effect on his or its business, properties, or prospects. Each member of the Borrower's Group has all franchises, authorizations, patents, trademarks, copyrights, and other rights necessary to advantageously conduct his or its business and all such franchises, authorizations, patents, trademarks, copyrights, and other necessary rights are in full force and effect and are not in known conflict with the rights of others.

4860-4866-1889, v. 3

(c)    Laws and Taxes.  Each Borrower's Group member is in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions, or other requirements applicable to or imposed upon such Borrower's Group member by any law, governmental authority, court, or agency. Borrower has filed, and has caused to be filed for each Borrower's Group member, all required tax returns and reports that are now required to be filed by them in connection with any federal, state, and local tax, duty or charge levied, assessed, or imposed upon Borrower's Group members or their respective assets, including unemployment, social security, and real estate taxes. Borrower, for himself and on behalf of each Borrower's Group member, has paid all taxes which are now due and payable. No taxing authority has asserted or assessed any additional tax liabilities against any Borrower's Group member which are outstanding on this date, and Borrower has not filed for any extension of time for the payment of any tax or the filing of any tax return or report for any Borrower's Group member.

(d)    Title.  Borrower has good and marketable title to all equity in each Borrower's Group member that is a corporation or limited liability company, and all assets of the Borrower's Group members are free and clear from all liens and encumbrances of any kind, except for (collectively, the "Permitted Liens"): (1) current taxes and assessments not yet due and payable; (2) liens and encumbrances, if any, reflected or noted on Borrower's financial statements or notes thereto provided to Lender; (3) assets disposed of in the ordinary course of business; and (4) any security interests, pledges, assignments or mortgages granted to Lender to secure the repayment or performance of Borrower's obligations hereunder.

6.    Affirmative Covenants.

(a)    Insurance.  At its own cost, Borrower shall obtain and maintain insurance against loss, destruction or damage to the properties and business of the Borrower's Group with such insurance of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as the Borrower's Group and, in any event, sufficient to fully protect Lender's interest in the Collateral. All insurance policies required hereby shall be evidenced by one or more Certificates of Insurance delivered to Lender by Borrower as Lender may request from time to time.

(b)    Taxes. Borrower shall pay when due all taxes, assessments and other governmental charges imposed upon each Borrower's Group member or his or its assets, franchises, business, income or profits before any penalty or interest accrues thereon, and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums which by law might be a lien or charge upon any of its assets, provided that (unless any material item or property would be lost, forfeited or materially damaged as a result thereof) no such charge or claim need be paid if it is being diligently contested in good faith.

(c)    Compliance with Laws.  Borrower shall, and shall cause each Borrower's Group member to comply, in all material respects, with all federal, state, and local laws, regulations and orders applicable to them or their assets.

(d)    Financial Statements.  Borrower shall provide Lender monthly balance sheets and financial statement with respect to each Borrower's Group member no

4860-4866-1889, v. 3

later than thirty (30) days following the end of each month.

(e)    <u>Loan Proceeds</u>. This is a commercial loan. Borrower shall use loan proceeds exclusively in connection with the operations of the restaurants operated by Borrower and members of Borrower's Group or to pay in full any outstanding indebtedness of the Borrower's Group that is secured by the Collateral.

7.    <u>Defaults.</u>

(a)    <u>Events of Default</u>. The following events are hereby defined as "defaults" for all purposes of this Note:

(i)    Borrower shall fail to pay any amount (whether principal or interest) within ten (10) days after the date that such payment is due under this Note;

(ii)    Borrower shall fail to perform or observe any of its other covenants or agreements contained in this Note and/or the Security Agreement and such failure shall not have been remedied or cured within the cure period set forth in such document or agreement; or, if the document or agreement does not set forth a cure period, then within thirty (30) days after written notice thereof, requesting the same to be remedied, shall have been delivered to Borrower by Lender;

(iii)    Borrower shall, for himself or on behalf of any Borrower's Group member, institute proceedings for an order for relief, or shall consent to the institution of such a proceeding against him or it, or shall file a petition or consent seeking reorganization or arrangement under, the federal bankruptcy laws, or shall consent to the appointment of a receiver or trustee or assignee in bankruptcy, or shall make an assignment for the benefit of creditors, or shall admit in writing his or its inability to pay his or its debts generally as they become due;

(iv)    An involuntary order for relief under the federal bankruptcy laws shall have been entered or a decree or order of a court having jurisdiction in the premises shall have been entered approving as properly filed a petition seeking reorganization of Borrower and/or the Borrower's Group under the federal bankruptcy laws or any other similar applicable federal or state laws, and such decree or order shall have continued undischarged or unstayed for a period of sixty (60) days; or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of Borrower and/or the Borrower's Group members or of substantially all of the their property or for sequestration of substantially all of their property, or for the winding up or liquidation in insolvency or bankruptcy of the affairs of Borrower or any Borrower's Group member, shall have been entered, and such decree or order shall have remained in force undischarged and unstayed for a period of sixty (60) days; and/or

(v)    (A) The sale in a single transaction or a series of related transactions, as an original issuance or by Borrower of more than 50% of the total issued and outstanding equity of any Borrower's Group member; (B) the sale of all or substantially all of the assets of, or the dissolution of, or the cessation of the

operations of any member of the Borrower's Group; and/or (C) the merger or consolidation of a Borrower's Group member with or into another unaffiliated entity.

(b) Remedies. If an event of default exists and remains uncured, Lender may exercise any right, power or remedy permitted by law or as set forth herein and, without limiting the generality of the foregoing, Lender shall thereupon have the right to declare the entire unpaid principal amount hereof and all interest accrued thereon, together with Lender's reasonable attorneys' fees and costs of collection, to be, and such principal, interest and other sums shall thereupon become, forthwith due and payable, without presentment, demand, protest or any notice of any kind, all of which Borrower hereby expressly waives.

8. Borrower's Death or Total Disability. Upon Borrower's death or total disability, Lender shall be entitled to declare the entire unpaid principal amount and accrued interest of this Note, together with Lender's reasonable attorneys' fees and costs of collection, immediately due and payable.

9. Rights Cumulative. The rights and remedies of Lender as provided herein shall be cumulative and concurrent, and may be pursued singly, successively, or together against Borrower or any Borrower's Group member, at the sole discretion of Lender; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same. Lender shall not by any act of omission or commission be deemed to waive any of its rights or remedies under this Note unless such waiver is in writing and signed by Lender, and then only to the extent specifically set forth therein; and a waiver of one event shall not be construed as continuing or as a bar to or waiver of such right or remedy on a subsequent event.

10. Construction of Terms: Assignment. The word "Borrower" whenever used herein is intended to and shall be construed to mean the undersigned. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. Borrower shall not have the right to transfer or assign (by operation or law or otherwise) any of its obligations hereunder without Lender's prior written consent, which consent may be withheld in Lender's sole discretion. Any purported sale, assignment, negotiation, or other transfer of this Note by Borrower (including transfers and assignments by operation of law) shall be null and void and of no force or effect whatsoever.

11. Modifications. This Note may be changed only by an agreement in writing signed by Borrower and Lender.

12. Governing Law. This Note shall be governed by and construed according to the laws of the State of Michigan. Any court litigation arising out of this Note shall be litigated only in the Oakland County, Michigan Circuit Court, and the Borrower, for himself and on behalf of the Borrower's Group, and Lender irrevocably consent to the personal jurisdiction and venue of those courts over the parties.

13. Headings. The headings preceding the text of the paragraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Note nor shall they affect its meaning, construction, or effect.

14. Severability. If any provision of this Note or the application thereof is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions hereof

shall not be affected thereby, and each provision of this Note shall be valid and enforceable to the fullest extent permitted by law.

15. <u>Lost, Stolen, Destroyed or Mutilated Note</u>. Upon receipt of evidence satisfactory to Borrower of the loss, theft, destruction or mutilation of this Note and, in case of any such loss, theft or destruction, upon receipt of indemnity reasonably satisfactory to Borrower or, in the case of any such mutilation, upon surrender and cancellation of this Note, Borrower will make and deliver, in lieu of such lost, stolen, destroyed or mutilated Note, a new Note bearing interest at the rate set forth herein or like tenor and unpaid principal amount of this Note so lost, stolen, destroyed or mutilated.

16. <u>Collection</u>. If this Note is placed in the hands of an attorney for collection as provided herein or for enforcement, Borrower shall pay all reasonable attorneys' fees incurred by Lender and all court and other reasonable costs of any collection efforts.

17. <u>Notices</u>. All notices, demands and other communications made hereunder shall be in writing and shall be given either by personal delivery, by nationally recognized overnight courier (with charges prepaid) or by telecopy (with telephone confirmation), and shall be deemed to have been given or made when personally delivered, the day following the date deposited with such overnight courier service or when transmitted by telecopy machine and confirmed, addressed to the respective parties at the addresses set forth on the first page of the note (or such other address for a party as shall be specified by like notice).

Borrower has caused this Note to be duly executed as of the day and year first above written.

BORROWER:

By: _____
MATTHEW BUSKARD

## Exhibit A – Loan Amortization Schedule

**Loan Date: Oct 1, 2023**
**Principal: $170,000.00**
**# of Payments: 18**
**Interest Rate: 25.00%**
**Monthly Payment: $6,759.17**
**Balloon Payment: $100,595.14**

### Schedule of Payments

| Payment | Date | Principal | Interest | Payment | Balance |
|---|---|---|---|---|---|
| 1 | Nov 1, 2023 | $3,217.51 | $3,541.66 | $6,759.17 | $166,782.49 |
| 2 | Dec 1, 2023 | $3,284.54 | $3,474.63 | $6,759.17 | $163,497.95 |
| Year | 2023 | $6,502.05 | $7,016.29 | $13,518.34 | $163,497.95 |
| 3 | Jan 1, 2024 | $3,352.96 | $3,406.21 | $6,759.17 | $160,144.99 |
| 4 | Feb 1, 2024 | $3,422.82 | $3,336.35 | $6,759.17 | $156,722.17 |
| 5 | Mar 1, 2024 | $3,494.13 | $3,265.04 | $6,759.17 | $153,228.04 |
| 6 | Apr 1, 2024 | $3,566.92 | $3,192.25 | $6,759.17 | $149,661.12 |
| 7 | May 1, 2024 | $3,641.23 | $3,117.94 | $6,759.17 | $146,019.89 |
| 8 | Jun 1, 2024 | $3,717.09 | $3,042.08 | $6,759.17 | $142,302.80 |
| 9 | Jul 1, 2024 | $3,794.53 | $2,964.64 | $6,759.17 | $138,508.27 |
| 10 | Aug 1, 2024 | $3,873.58 | $2,885.59 | $6,759.17 | $134,634.69 |
| 11 | Sep 1, 2024 | $3,954.28 | $2,804.89 | $6,759.17 | $130,680.41 |
| 12 | Oct 1, 2024 | $4,036.66 | $2,722.51 | $6,759.17 | $126,643.75 |
| 13 | Nov 1, 2024 | $4,120.76 | $2,638.41 | $6,759.17 | $122,522.99 |
| 14 | Dec 1, 2024 | $4,206.61 | $2,552.56 | $6,759.17 | $118,316.38 |
| Year | 2024 | $45,181.57 | $35,928.49 | $81,110.07 | $118,316.38 |
| 15 | Jan 1, 2025 | $4,294.25 | $2,464.92 | $6,759.17 | $114,022.13 |
| 16 | Feb 1, 2025 | $4,383.71 | $2,375.46 | $6,759.17 | $109,638.42 |
| 17 | Mar 1, 2025 | $4,475.04 | $2,284.13 | $6,759.17 | $105,163.38 |
| 18 | Apr 1, 2025 | $4,568.24 | $2,190.90 | $6,759.14 | $100,595.14 |
| Year | 2025 | $17,721.24 | $9,315.42 | $27,036.66 | $100,595.14 |
| | Totals | $69,404.86 | $52,260.21 | $121,665.07 | $100,595.14 |

# Secured Promissory Note - Matthew Buskard et al (TCCDL September 22 2023), Final

Final Audit Report                                                     2023-09-23

| | |
|---|---|
| Created: | 2023-09-22 |
| By: | noah dorfman (nd@northstarpartners.biz) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAD68u3Ux61kVpskNwG6r8Nd6pn1CbntxQ |

## "Secured Promissory Note - Matthew Buskard et al (TCCDL September 22 2023), Final" History

📄 Document created by noah dorfman (nd@northstarpartners.biz)
  2023-09-22 - 9:00:12 PM GMT- IP address: 68.62.61.207

📧 Document emailed to Matthew Buskard (matt@bobcatbonnies.com) for signature
  2023-09-22 - 9:02:12 PM GMT

📄 Email viewed by Matthew Buskard (matt@bobcatbonnies.com)
  2023-09-23 - 0:17:13 AM GMT- IP address: 98.97.1.218

🖋 Document e-signed by Matthew Buskard (matt@bobcatbonnies.com)
  Signature Date: 2023-09-23 - 0:17:59 AM GMT - Time Source: server- IP address: 98.97.1.218

✅ Agreement completed.
  2023-09-23 - 0:17:59 AM GMT

# EXHIBIT 2

<u>SECURITY AGREEMENT</u>

THIS SECURITY AGREEMENT (together with all exhibits hereto, this "Agreement"), dated as of September 25, 2023, is made by MATTHEW BUSKARD, a Michigan resident whose address is 24650 Westhampton Street, Oak Park, Michigan 48237 ("Borrower") and the following wholly-owned entities or businesses: (a) BOBCAT BONNIE'S ENTERPRISES, LLC, a Michigan limited liability company (the "Management Company"); (b) 1800 MICHIGAN AVENUE LLC, a Michigan limited liability company (the "Michigan Avenue Restaurant"); (c) 200 W MICHIGAN AVENUE, a sole proprietorship (the "Ypsilanti Restaurant"); (d) BONNIE'S TOLEDO LLC, a sole proprietorship (the "Toledo Restaurant"); (e) BOBCAT BONNIE'S GRAND RAPIDS LLC, a sole proprietorship (the "Grand Rapids Restaurant"); (f) 240 W 9 MILE RD LLC, a Michigan limited liability company ("Bobcat Bonnie's Ferndale"); and (g) BONNIE'S TO GO LLC, a Michigan limited liability company ("Bonnie's To Go Restaurant," and, together with Borrower, the Management Company, the Michigan Avenue Restaurant, the Ypsilanti Restaurant, the Toledo Restaurant, the Grand Rapids Restaurant, and Bobcat Bonnie's Ferndale, the "Grantors"), in favor of NORTH STAR PARTNERS, L.L.C., a Michigan limited liability company, whose address is 40900 Woodward Avenue, Suite 350, Bloomfield Hills, Michigan 48304 ("Lender").

<u>RECITALS</u>

A.       Borrower and Lender are parties to a Secured Promissory Note of even date herewith in the principal amount of One Hundred Seventy Thousand and No/100 Dollars ($170,000.00) (the "Note").

B.       Under the terms of the Note, Grantors are required to grant to Lender a security interest in and to the Collateral hereinafter described.

Accordingly, the parties agree as follows:

ARTICLE 1<br><u>DEFINITIONS</u>

1.1       "Assets" mean all assets described in Article 8 and Article 9 of the Uniform Commercial Code as in effect in the State of Michigan (the "UCC") including, without limit, all accounts, deposit accounts, documents, instruments, general intangibles (including without limitation all tax refund claims, payment intangibles, intellectual property, and software), deposit accounts, letter-of-credit rights, chattel paper, all monies and claims for money due or to become due, all security held or granted to any Grantor, all equipment, inventory, fixtures, and all other goods and all other present and future personal property of Grantors, including but not limited to all products and proceeds, accessions, securities and rights in securities, dividends, distributions, payments and proceeds (including cash dividends and sale proceeds), other property to which any Grantor may become entitled by reason of the ownership of any property, all books, records, databases, information, all payments under insurance, and any other payables, commercial tort claims, investment property, letter-of-credit rights, negotiable instruments, payment intangibles, securities, and software, as each such term is defined in the UCC. For the avoidance of doubt, Assets include, without limitation, all personal property, including works of art, owned by Borrower, which Borrower represents has a minimum value of approximately $450,000, and all assets within the premises located at 24650 Westhampton Street, Oak Park, Michigan and at 21888 210th Avenue, Tustin, Michigan.

1.2    "Lien" means any pledge, assignment, hypothecation, mortgage agreement, security interest, deposit arrangement, option, conditional sale, or title retaining contract, sale and leaseback transaction, financing statement filing, lessor's or lessee's interest under any lease, subordination of any claim or right, or any other type of lien, charge, or encumbrance.

## ARTICLE 2
## GRANT OF SECURITY INTEREST: REPRESENTATIONS; COVENANTS

2.1    Grant of Security Interest. To secure the prompt and complete payment of the Note, each Grantor hereby grants, assigns, and transfers to Lender a security interest in and to all commercial and personal Assets, whether now owned or existing or hereafter acquired or arising and wherever located (collectively, the "Collateral").

2.2    Representations. Each Grantor represents, warrants, covenants, and agrees with Lender as follows:

(a)    Grantor is the lawful owner of its Collateral or has the power to transfer the Collateral and has the right and authority to subject the same to the security interest of Lender and none of the Collateral is subject to any Lien other than Permitted Liens as such term is defined in the Note, and Liens in favor of Lender, and there is no effective financing statement or other filing covering any of the Collateral on file in any public office, other than in connection with Permitted Liens and Liens in favor of Lender.

(b)    This Agreement creates a valid security interest in favor of Lender in the Collateral, which security interest, upon filing of financing statements, will be perfected for security interests, enforceable against Grantor and all third parties, subject to bankruptcy, insolvency, and similar laws affecting creditors' rights in general and to the availability of equitable remedies, and securing the payment of the Note.

(c)    Grantor authorizes Lender to file financing statements describing the Collateral as determined by Lender and if requested will execute and deliver to Lender all financing statements and other documents and take such other actions as may from time to time be reasonably requested by Lender in order to maintain a perfected security interest in and, if applicable, possession and control of, the Collateral.

(d)    Grantor will keep the Collateral free at all times from any and all Liens. Grantor will not, without the prior written consent of Lender, sell, lease, license, transfer, assign, or otherwise dispose, or permit or suffer to be sold, leased, licensed, transferred, assigned, or otherwise disposed, any of the Collateral.  Upon reasonable notice and at reasonable times, Lender or its attorneys may inspect the Collateral and for such purpose may enter upon any and all premises where the Collateral is or might be located.

(e)    No Grantor will change its name or place of incorporation or organization or federal taxpayer identification number except upon 30 days' prior written notice to Lender.

2.3    Insurance. Grantors shall keep the tangible Collateral insured at all times and maintain in full force and effect insurance with responsible and reputable insurance companies or associations in such amounts, on such terms, and covering such risks, including fire and other risks insured against by extended coverage, as is usually carried by companies engaged in similar

businesses. Upon request, Grantors shall deliver a copy of such policies to Lender. In the case of any loss to tangible Collateral, the proceeds shall be paid to Lender for application to the Note.

2.4    Maintenance of Collateral. Grantors will maintain the Collateral in accordance with industry standards and shall promptly make all repairs, replacements, and other improvements which are necessary or desirable. Grantors shall promptly furnish to Lender a statement respecting any loss or damage to any of the tangible Collateral in an amount in excess of $25,000. Grantors shall preserve and maintain all rights of Grantors and Lender in all Collateral, and will not subordinate, supplement, or otherwise modify any claim or right of Grantors with respect to any Collateral if the effect is to impair, or is in any manner adverse to, the rights or interests of Lender.

2.5    Special Rights Regarding Receivables. Lender may, at any time and from time to time, in its sole discretion, verify, directly with each person which owes any Accounts (as such term is defined in the UCC) to any Grantor (collectively, the "Obligors"), the Accounts in any reasonable manner. Lender may also notify the Obligors of the security interest of Lender in the Collateral, and/or direct such Obligors that all payments in connection with such obligations and the Collateral be made directly to Lender in Lender's name. Grantors agree to take any and all action as Lender may reasonably request to assist Lender in exercising the rights described in this Section.

ARTICLE 3
REMEDIES

3.1    General Remedies. Upon the occurrence of any Event of Default (as defined in the Note), Lender shall have and may exercise any of the rights and remedies provided to it under this Agreement or in the Note or provided by law, including but not limited to, all rights and remedies of a secured party under the UCC. Upon request, each Grantor shall assemble the Collateral and make it available to Lender at a place reasonably designated by Lender, and authorizes Lender to take possession of the Collateral with or without demand and in accordance with applicable law, and to sell and dispose of the same at public or private sale and to apply the proceeds of such sale to the costs and out-of-pocket expenses (including reasonable attorneys' fees and disbursements incurred by Lender), and then to the payment and satisfaction of the Note. Any requirement of reasonable notice shall be met if Lender sends such notice to Borrower at least 10 days prior to the date of sale, disposition, or other event giving rise to a required notice. Lender may be the purchaser at any such sale. Each Grantor expressly authorizes such sale or sales of the Collateral. Lender has no obligation to preserve rights against prior parties and Lender has no obligation to clean-up or otherwise prepare the Collateral for sale. Each Grantor waives as to Lender any right of subrogation or marshaling of such Collateral. To this end, Grantor expressly agrees that any such Collateral which Lender may hold, or which may come to its possession, may be dealt with in all respects and particulars as though this Agreement were not in existence.

3.2    Special Remedies Concerning Certain Collateral.

(a)    Upon the occurrence of any Event of Default, Grantors shall, if requested to do so in writing and to the extent so requested, promptly collect and enforce payment of all amounts due to Grantors on account of, in payment of, or in connection with, any of the Collateral, hold all payments in the form received by Grantors as trustee for Lender, without commingling with any funds belonging to Grantors, and immediately deliver

all such payments to Lender with endorsement to Lender's order of any checks or similar instruments.

(b)     Upon the occurrence of any Event of Default, Grantors shall, upon request, notify all account debtors of Lender's security interest and direct such account debtors that all payments shall be made directly to Lender. Lender itself may, upon the occurrence of an Event of Default, so notify and direct any such account debtor that payments are to be made directly to Lender.

(c)     Each Grantor hereby (i) irrevocably constitutes and appoints Lender its true and lawful attorney, for and in Grantor's name, place, and stead, to collect, demand, receive, sue for, compromise, and give good and sufficient releases for any monies due or to become due on account of, in payment of, or in connection with the Collateral; (ii) irrevocably authorizes Lender to endorse the name of such Grantor upon any checks, drafts, or similar items which are received in payment of, or in connection with, any of the Collateral, and to do all things necessary in order to reduce the same to money; (iii) irrevocably assents to the settlement, compromise, or adjustment of all obligations; and (iv) irrevocably authorizes Lender to notify the post office authorities to change the address for delivery of such Grantor's mail to an address designated expedient by Lender, and Lender may receive, open, and dispose of all mail addressed to any Grantor. Notwithstanding any other provisions of this Agreement, Lender shall have no duty, and shall not be obligated to make any demand or inquiry as to the nature or sufficiency of any payments received by it or to present or file any claim or take any other action to collect or enforce the payment of any amounts due or to become due on account of or in connection with any of the Collateral.

## ARTICLE 4
## MISCELLANEOUS

4.1     _Remedies Cumulative_. No right or remedy conferred upon or reserved to Lender under the Note is intended to be exclusive of any other right or remedy, and every right and remedy available to Lender shall be cumulative, whether given hereunder, under any applicable law, or otherwise. Every right and remedy of Lender under the Note or under applicable law may be exercised from time to time and as often as may be deemed expedient by Lender. To the extent that they lawfully may, Grantors shall not, at any time, insist upon, plead, or claim or take any benefit or advantage of any applicable present or future stay, extension, or moratorium law which may affect observance or performance of any provisions of the Note; nor will they claim, take, or insist upon any benefit or advantage of any present or future law providing for the valuation or appraisal of any security for their obligations under the Note prior to any sale or sales thereof which may be made under or by virtue of any instrument governing the same; nor will Grantors, after any such sale or sales, claim or exercise any right under any applicable law to redeem any portion of such security sold.

4.2     _Conduct; No Waiver_. No waiver of default shall be effective unless in writing executed by Lender and waiver of any default or forbearance on the part of Lender in enforcing any of its rights under this Agreement shall not operate as a waiver of any other default or the same default on a future occasion or of such right in general.

4.3     _Governing Law: Consent to Jurisdiction_. This Agreement and the respective rights and obligations of the parties under this Agreement shall be governed by, and shall be

determined under, the internal laws of the State of Michigan applicable to contracts between residents of the State of Michigan to be performed solely in the State of Michigan, and, without regard to choice of law principles. The parties agree that sole and exclusive jurisdiction of this Agreement shall be retained by the Circuit Court of Oakland County for any and all purposes, including the determination and adjudication of the rights of the parties, for the purpose of enforcing the provisions of this Agreement. This provision is intended to be a mandatory forum selection clause. The parties agree that venue is proper and convenient in the Oakland County Circuit Court.

      4.4    <u>Notices</u>. All notices, demands, requests, consents, and other communications hereunder shall be delivered in the manner described in the Note.

      4.5    <u>Rights Not Construed as Duties</u>. Lender neither assumes nor shall Lender have any duty of performance or other responsibility under any contract in which Lender has or obtains a security interest hereunder. If any Grantor fails to perform any agreement contained herein, Lender may, but is in no way obligated to perform, or cause performance of, such agreement and the reasonable out-of-pocket expenses of Lender incurred in connection therewith shall be payable by Grantor under Section. The powers conferred on Lender hereunder are solely to protect its interests in the Collateral and do not impose any duty upon it to exercise any such powers. Except for the safe custody of any Collateral in its possession and accounting for monies actually received by it hereunder, Lender shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.

      4.6    <u>Amendments</u>. None of the terms or provisions of this Agreement may be modified or amended in any way except by an instrument in writing executed by Grantors and Lender.

      4.7    <u>Severability</u>. If any one or more provisions of this Agreement should be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected, impaired, prejudiced, or disturbed thereby, and any provision found partially unenforceable shall be interpreted to be enforceable to the fullest extent possible.

      4.8    <u>Expenses</u>. Grantors will, upon demand, pay to Lender any and all out-of-pocket expenses, including the reasonable fees and disbursements of its counsel and of any experts and agents, which Lender may incur in connection with (a) the administration of this Agreement; (b) the custody, preservation, use, or operation of, or the sale of, collection from, or other realization upon, any of the Collateral; (c) the exercise or enforcement of any of the rights of Lender hereunder or under the Note; or (d) the failure of Grantors to perform or observe any of the provisions hereof. Grantors agree to hold harmless and indemnify Lender from and against any and all third party claims, losses, and liabilities actually incurred or suffered, growing out of, or resulting from this Agreement.

      4.9    <u>Successors and Assigns: Termination</u>. This Agreement creates a continuing, absolute, unconditional, and irrevocable security interest in the Collateral and is binding upon Grantors, and each Grantor's successors, and assigns (including all persons who become bound as a Grantor to this Agreement), and inures, together with the rights and remedies of Lender hereunder, to the benefit of Lender and its successors, transferees, and assigns. Upon the irrevocable payment in full of the Note, the security interest granted hereunder shall terminate and all rights to the Collateral shall revert to Grantors.

4.10    Evidence of Note.  Lender's books and records showing the Note shall be admissible in any action or proceeding, shall be binding upon Grantors for the purpose of establishing the amount due under the Note, and shall constitute prima facie proof, absent manifest error, of the amount due to Lender, as well as the obligations of Grantors to Lender.

4.11    Counterparts. This Agreement may be executed in any number counterparts, all of which taken together constitute one agreement, provided that each Grantor agrees that this Agreement is effective and enforceable against such Grantor upon the execution hereof by such Grantor, regardless of whether this Agreement is signed by any other Grantor at any time.  Signatures to this Agreement or to any such counterpart, may be delivered by electronic means and shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version delivered in person.

4.12    *Agreement Drafted by Lender's Attorney.  The parties each acknowledge for themselves, their respective heirs, successors and permitted assigns that Lender's counsel, The Capital City Deal Lawyer, LLC ("Company Counsel") prepared this Agreement on behalf of Lender and not on behalf of the other parties.  The parties acknowledge and agree as follows:*

*(a)    They are advised that a conflict may exist between their respective interests and those of Lender and they hereby waive any such conflicts arising because of Company Counsel's participation in the preparation of this Agreement;*

*(b)    They have been advised by Company Counsel to seek the advice of their own independent counsel; and*

*(c)    They have each had an opportunity to seek the advice of their own independent counsel regarding the economic, legal and tax consequence of this Agreement.*

*[signature page follows]*

IN WITNESS WHEREOF, Grantors have executed this Agreement as of the day first written above.

By:_____
MATTHEW BUSKARD, individually and on behalf of:

BOBCAT BONNIE'S ENTERPRISES, LLC, a Michigan limited liability company;

1800 MICHIGAN AVENUE LLC, a Michigan limited liability company;

200 W MICHIGAN AVENUE, a sole proprietorship;

BONNIE'S TOLEDO LLC, a sole proprietorship;

BOBCAT BONNIE'S GRAND RAPIDS LLC, a sole proprietorship;

240 W 9 MILE RD LLC, a Michigan limited liability company; and

BONNIE'S TO GO LLC, a Michigan limited liability company

# Security Agreement - Matthew Buskard and related entities, Final, 2

Final Audit Report                                           2023-09-23

| | |
|---|---|
| Created: | 2023-09-22 |
| By: | noah dorfman (nd@northstarpartners.biz) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAY3SgCILkQ5hf_aPQBgdYR6rpM_UwI_aW |

## "Security Agreement - Matthew Buskard and related entities, Final, 2" History

📄 Document created by noah dorfman (nd@northstarpartners.biz)
2023-09-22 - 9:06:28 PM GMT- IP address: 68.62.61.207

📧 Document emailed to Matthew Buskard (matt@bobcatbonnies.com) for signature
2023-09-22 - 9:07:14 PM GMT

📄 Email viewed by Matthew Buskard (matt@bobcatbonnies.com)
2023-09-23 - 0:18:05 AM GMT- IP address: 98.97.1.218

✍️ Document e-signed by Matthew Buskard (matt@bobcatbonnies.com)
Signature Date: 2023-09-23 - 0:18:31 AM GMT - Time Source: server- IP address: 98.97.1.218

✅ Agreement completed.
2023-09-23 - 0:18:31 AM GMT

# EXHIBIT 3

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

Filing Number: 20230927000454-0

Filing Date and Time: 09/27/2023 12:53 PM

Total Number of Pages: 1

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Cassandra Farley

**B. E-MAIL CONTACT AT FILER (optional)**
cfarley@seyburn.com

**C. SEND ACKNOWLEDGEMENT TO: (Name and Address)**
Cassandra Farley
2000 Town Center
Suite 1500
Southfield, MI 48075 USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ⬚ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **1b. INDIVIDUAL'S SURNAME** Buskard | **FIRST PERSONAL NAME** Matthew | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **1c. MAILING ADDRESS** 24650 Westhampton St | **CITY** Oak Park | **STATE** MI **POSTAL CODE** 48237 | **COUNTRY** USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ⬚ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **2b. INDIVIDUAL'S SURNAME** Buskard | **FIRST PERSONAL NAME** Matthew | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **2c. MAILING ADDRESS** 21888 210th Ave | **CITY** Tustin | **STATE** MI **POSTAL CODE** 49688 | **COUNTRY** USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME North Star Partners, LLC | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **3c. MAILING ADDRESS** 40900 Woodward Avenue  Suite 350 | **CITY** Bloomfield Hills | **STATE** MI **POSTAL CODE** 48304 | **COUNTRY** USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets of the Debtor, whether now owned or hereafter acquired, including but not limited to all personal property owned by the Debtor located at 24650 Westhampton St, Oak Park, Michigan and 21888 210th Ave, Tustin, Michigan.

All security held by Debtor in favor of, or granted to: (a) Bobcat Bonnie's Enterprises LLC, a Michigan limited liability company; (b) 1800 Michigan Avenue LLC, a Michigan limited liability company; (c) 200 W Michigan Ave LLC, a Michigan limited liability company; (d) 240 W 9 Mile Rd LLC, a Michigan limited liability company; (e) Bonnie's To Go, LLC, a Michigan limited liability company; (f) Bonnie's Toledo (also doing business as Bobcat Bonnie's Toledo), a sole proprietorship; and (g) Bobcat Bonnie's Grand Rapids, a sole proprietorship.

5. Check only if applicable and check only one box: Collateral is ⬚ held in a Trust (see UCC1Ad, item 17 and instructions) ⬚ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: ⬚ Public-Finance Transaction ⬚ Manufactured-Home Transaction ⬚ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box: ⬚ Agricultural Lien ⬚ Non-UCC Filing |
|---|---|

7. ALTERNATIVE DESIGNATION (if applicable): ⬚ Lessee/Lessor ⬚ Consignee/Consignor ⬚ Seller/Buyer ⬚ Bailee/Bailor ⬚ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
C/M: 13848.23040 Document No. 1838376

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

## Filing Acknowledgement

September 27, 2023 12:53 PM

**Work Order Number**
WO202309270000368

**Initial Filing Number**
20230927000454-0

**Filing Description**
UCC-1

**Document Filing Number**
20230927000454-0

**Debtors**
Matthew Buskard

24650 Westhampton St
Oak Park, MI 48237 USA

Matthew Buskard

21888 210th Ave
Tustin, MI 49688 USA

**Secured Parties**
North Star Partners, LLC

40900 Woodward Avenue
Suite 350
Bloomfield Hills, MI 48304 USA

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State

████████
████████
████████
████████

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20231005000068-1**

Filing Date and Time: 10/05/2023 08:11 AM

Total Number of Pages: 2

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Cassandra Farley

**B. E-MAIL CONTACT AT FILER (optional)**
cfarley@seyburn.com

**C. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

Cassandra Farley

2000 Town Center

Suite 1500

Southfield, MI 48075 USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. |
|---|---|
| **20230927000454-0** | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c

☐ ADD name: Complete item 7a or 7b, and item 7c

☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

**8.** ☑ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☑ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

All assets of the Debtor, whether now owned or hereafter acquired, including but not limited to all personal property owned by Debtor located at 24650 Westhampton Street, Oak Park, Michigan and 21888 210th Avenue, Tustin, Michigan.

All security held by Debtor in favor of, or granted to: (a) Bobcat Bonnie's Enterprises LLC, a Michigan limited liability company; (b) 1800 Michigan Avenue LLC, a Michigan limited liability company; (c) 200 W Michigan Ave LLC, a Michigan limited liability company; (d) 240 W 9 Mile Rd LLC, a Michigan limited liability company; (e) Bonnie's To Go, LLC, a Michigan limited liability company; (f) Bonnie's Toledo LLC, an Ohio limited liability company (also doing business as Bobcat Bonnie's Toledo); and (g) Bobcat Bonnie's Grand Rapids, LLC, a Michigan limited liability company (also doing business as Bobcat Bonnie's Grand Rapids).

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **North Star Partners, LLC** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
   C/M: 13848.23040 Document No. 1838376

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

## Filing Acknowledgement

October 05, 2023 08:11 AM

**Work Order Number**
WO202310050000066

**Initial Filing Number**
20230927000454-0

**Filing Description**
UCC-3 Amendment Collateral

**Document Filing Number**
20231005000068-1

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State

■■■■■■■■
■■■■■■■■
■■■■■■■■
■■■■■■■■

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
**Cassandra Farley**

**B. E-MAIL CONTACT AT FILER (optional)**
**cfarley@seyburn.com**

**C. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

**Cassandra Farley**
**2000 Town Center**
**Suite 1500**
**Southfield, MI 48075 USA**

**Filing Number:** 20231005000177-8

Filing Date and Time: 10/05/2023 10:04 AM

Total Number of Pages: 2

*(This document was filed electronically)*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. _ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **20230927000454-0** | (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. _ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. _ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9 For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. _ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. _ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                          AND Check one of these three boxes to:

This change affects _ Debtor or _ Secured Party of record       _ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c       _ ADD name: Complete item 7a or 7b, and item 7c       _ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ **COLLATERAL CHANGE: Also** check one of these four boxes: _ ADD collateral   _ DELETE collateral   ☑ RESTATE covered collateral   _ ASSIGN collateral

Indicate collateral:

All assets of the Debtor, whether now owned or hereafter acquired, including but not limited to all personal property owned by Debtor located at 24650 Westhampton Street, Oak Park, Michigan and 21888 210th Avenue, Tustin, Michigan.

All security held by Debtor in favor of, or granted to: (a) Bobcat Bonnie's Enterprises LLC, a Michigan limited liability company; (b) 1800 Michigan Avenue LLC, a Michigan limited liability company; (c) 200 W Michigan Ave LLC, a Michigan limited liability company; (d) 240 W 9 Mile Rd LLC, a Michigan limited liability company; (e) Bonnie's To Go, LLC, a Michigan limited liability company; (f) Bonnie's Toledo LLC, an Ohio limited liability company (also doing business as Bobcat Bonnie's Toledo); and (g) Bonnie's Grand Rapids, LLC, a Michigan limited liability company (also doing business as Bobcat Bonnie's Grand Rapids).

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here _ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **North Star Partners, LLC** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

### Filing Acknowledgement

October 05, 2023 10:04 AM

**Work Order Number**
WO202310050000156

**Initial Filing Number**
20230927000454-0

**Filing Description**
UCC-3 Amendment Collateral

**Document Filing Number**
20231005000177-8

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

Filing Number: 20230927000455-9

Filing Date and Time: 09/27/2023 12:53 PM

Total Number of Pages: 1

*(This document was filed electronically)*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| **Cassandra Farley** |
| B. E-MAIL CONTACT AT FILER (optional) |
| **cfarley@seyburn.com** |
| C. SEND ACKNOWLEDGEMENT TO: (Name and Address) |
| **Cassandra Farley** |
| **2000 Town Center** |
| **Suite 1500** |
| **Southfield, MI 48075 USA** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| **Bobcat Bonnie's Enterprises LLC** | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **240 W 9 Mile Rd** | **Ferndale** | **MI** | **48220** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| **Bonnie's To Go, LLC** | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **118 Sycamore St** | **Wyandotte** | **MI** | **48192** | **USA** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| **North Star Partners, LLC** | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **40900 Woodward Avenue Suite 350** | **Bloomfield Hills** | **MI** | **48304** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

All commercial and personal assets of the Debtors, whether now owned or hereafter acquired.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**C/M: 13848.23040 Document No. 1838361**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

### Filing Acknowledgement

September 27, 2023 12:53 PM

**Work Order Number**
WO202309270000368

**Initial Filing Number**
20230927000455-9

**Filing Description**
UCC-1

**Document Filing Number**
20230927000455-9

**Debtors**
Bobcat Bonnie's Enterprises LLC

240 W 9 Mile Rd
Ferndale, MI 48220 USA

Bonnie's To Go, LLC

118 Sycamore St
Wyandotte, MI 48192 USA

**Secured Parties**
North Star Partners, LLC

40900 Woodward Avenue
Suite 350
Bloomfield Hills, MI 48304 USA

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

Filing Number: 20230927000453-1

Filing Date and Time: 09/27/2023 12:53 PM

Total Number of Pages: 1

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Cassandra Farley

**B. E-MAIL CONTACT AT FILER (optional)**
cfarley@seyburn.com

**C. SEND ACKNOWLEDGEMENT TO: (Name and Address)**
Cassandra Farley
2000 Town Center
Suite 1500
Southfield, MI 48075 USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here – and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1800 Michigan Avenue LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1800 Michigan Ave | Detroit | MI | 48216 | USA |

2. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here – and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 200 W Michigan Ave LLC | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 200 W Michigan Ave | Ypsilanti | MI | 48197 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| North Star Partners, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 40900 Woodward Avenue  Suite 350 | Bloomfield Hills | MI | 48304 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All commercial and personal assets of the Debtors, whether now owned or hereafter acquired.

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is – held in a Trust (see UCC1Ad, item 17 and Instructions) – being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box: – Public-Finance Transaction – Manufactured-Home Transaction – A Debtor is a Transmitting Utility

6b. Check <u>only</u> if applicable and check <u>only</u> one box: – Agricultural Lien – Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): – Lessee/Lessor – Consignee/Consignor – Seller/Buyer – Bailee/Bailor – Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
C/M: 13848.23040 Document No. 1838362

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

## Filing Acknowledgement

September 27, 2023 12:53 PM

**Work Order Number**
WO202309270000368

**Initial Filing Number**
20230927000453-1

**Filing Description**
UCC-1

**Document Filing Number**
20230927000453-1

**Debtors**
1800 Michigan Avenue LLC

1800 Michigan Ave
Detroit, MI 48216 USA

200 W Michigan Ave LLC

200 W Michigan Ave
Ypsilanti, MI 48197 USA

**Secured Parties**
North Star Partners, LLC

40900 Woodward Avenue
Suite 350
Bloomfield Hills, MI 48304 USA

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20230927000456-8**

Filing Date and Time: 09/27/2023 12:53 PM

Total Number of Pages: 1

*(This document was filed electronically)*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| **Cassandra Farley** |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| **cfarley@seyburn.com** |

| C. SEND ACKNOWLEDGEMENT TO: (Name and Address) |
|---|
| **Cassandra Farley** |
| **2000 Town Center** |
| **Suite 1500** |
| **Southfield, MI 48075 USA** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here – and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **240 W 9 Mile Rd LLC** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **240 W 9 Mile Rd.** | **Ferndale** | **MI** | **48220** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here – and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Bobcat Bonnie's Grand Rapids** | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **1968 Breton Rd. SE** | **Grand Rapids** | **MI** | **49506** | **USA** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **North Star Partners, LLC** | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **40900 Woodward Avenue  Suite 350** | **Bloomfield Hills** | **MI** | **48304** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

All commercial and personal assets of the Debtors, whether now owned or hereafter acquired.

5. Check only if applicable and check only one box: Collateral is – held in a Trust (see UCC1Ad, item 17 and Instructions) – being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
– Public-Finance Transaction – Manufactured-Home Transaction – A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
– Agricultural Lien – Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): – Lessee/Lessor – Consignee/Consignor – Seller/Buyer – Bailee/Bailor – Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
C/M: 13848.23040 Document No. 1838363

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)



## MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

### Filing Acknowledgement

September 27, 2023 12:53 PM

**Work Order Number**
WO202309270000368

**Filing Description**
UCC-1

**Debtors**
240 W 9 Mile Rd LLC

Bobcat Bonnie's Grand Rapids

**Secured Parties**
North Star Partners, LLC

**Initial Filing Number**
20230927000456-8

**Document Filing Number**
20230927000456-8

240 W 9 Mile Rd.
Ferndale, MI 48220 USA

1968 Breton Rd. SE
Grand Rapids, MI 49506 USA

40900 Woodward Avenue
Suite 350
Bloomfield Hills, MI 48304 USA

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State

███████████████
███████████████
███████████████
███████████████

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20230928000154-2**

Filing Date and Time: 09/28/2023 09:31 AM

Total Number of Pages: 1

*(This document was filed electronically)*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| **Cassandra Farley** |
| B. E-MAIL CONTACT AT FILER (optional) |
| **cfarley@seyburn.com** |
| C. SEND ACKNOWLEDGEMENT TO: (Name and Address) |
| **Cassandra Farley** |
| **2000 Town Center** |
| **Suite 1500** |
| **Southfield, MI 48075 USA** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|---|
| **20230927000456-8** | | (or recorded) in the REAL ESTATE RECORDS |
| | | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ PARTY INFORMATION CHANGE:

Check one of these two boxes:
AND Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record | ☑ CHANGE name and/or address. Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Bobcat Bonnie's Grand Rapids** | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Bonnie's Grand Rapids, LLC** | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **1968 Breton Rd. SE** | **Grand Rapids** | **MI** | **49506** | **USA** |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **North Star Partners, LLC** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

## Filing Acknowledgement

September 28, 2023 09:31 AM

**Work Order Number**
WO202309280000137

**Filing Description**
UCC-3 Amendment Party Change

**Debtor**
Bonnie's Grand Rapids, LLC

**Initial Filing Number**
20230927000456-8

**Document Filing Number**
20230928000154-2

1968 Breton Rd. SE
Grand Rapids, MI 49506 USA

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number: 2023100500176-9**

Filing Date and Time: 10/05/2023 10:04 AM

Total Number of Pages: 1

*(This document was filed electronically)*

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>**Cassandra Farley** | |
| B. E-MAIL CONTACT AT FILER (optional)<br>**cfarley@seyburn.com** | |
| C. SEND ACKNOWLEDGEMENT TO: (Name and Address)<br>**Cassandra Farley**<br>**2000 Town Center**<br>**Suite 1500**<br>**Southfield, MI 48075 USA** | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here — and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME<br>**Bobcat Bonnie's Grand Rapids** | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS<br>**1968 Breton Rd. SE** | CITY<br>**Grand Rapids** | STATE **MI**  POSTAL CODE<br>**49506** | COUNTRY<br>**USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here — and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME<br>**North Star Partners, LLC** | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS<br>**40900 Woodward Avenue  Suite 350** | CITY<br>**Bloomfield Hills** | STATE **MI**  POSTAL CODE<br>**48304** | COUNTRY<br>**USA** |

4. COLLATERAL: This financing statement covers the following collateral:

All commercial and personal assets of the Debtor, whether now owned or hereafter acquired.

5. Check only if applicable and check only one box: Collateral is — held in a Trust (see UCC1Ad, item 17 and Instructions) — being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box:<br> — Public-Finance Transaction — Manufactured-Home Transaction — A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box:<br> — Agricultural Lien — Non-UCC Filing |
|---|---|

7. ALTERNATIVE DESIGNATION (if applicable): — Lessee/Lessor — Consignee/Consignor — Seller/Buyer — Bailee/Bailor — Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**C/M: 13848.23040**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

## Filing Acknowledgement

October 05, 2023 10:04 AM

**Work Order Number**
WO202310050000156

**Filing Description**
UCC-1

**Debtors**
Bobcat Bonnie's Grand Rapids

**Secured Parties**
North Star Partners, LLC

**Initial Filing Number**
20231005000176-9

**Document Filing Number**
20231005000176-9


1968 Breton Rd. SE
Grand Rapids, MI 49506 USA


40900 Woodward Avenue
Suite 350
Bloomfield Hills, MI 48304 USA

The Michigan Secretary of State, Uniform Commercial Code office has filed the attached documents. The filing number, date, and time are shown on each document. The filing number can be used to reference the document in the future.

Jocelyn Benson
Secretary of State



| | |
|---|---|
| FS Number: | OH00276243935 |
| Date Filed: | 28 September 2023 09:34:29 |

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

**NAME OF CONTACT AT FILER:** Kristen Reese

**PHONE NUMBER:** 614-934-1767

**EMAIL CONTACT AT FILER:** results@ddsimplified.com

**SEND ACKNOWLEDGEMENT TO:** Do Diligence, LLC
4449 Easton Way, 2nd Floor
Columbus
OHIO
43219
United States

## DEBTOR INFORMATION

**ORGANIZATION'S NAME:** Bonnie's Toledo LLC

**MAILING ADDRESS:** 152 N Summit St

**CITY:** Toledo     **STATE:** OHIO     **POSTAL CODE:** 43604     **COUNTRY:** United States

**ORGANIZATION'S NAME:** Bobcat Bonnie's Toledo

**MAILING ADDRESS:** 152 N Summit St

**CITY:** Toledo     **STATE:** OHIO     **POSTAL CODE:** 43604     **COUNTRY:** United States

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME:** North Star Partners, LLC

**MAILING ADDRESS:** 40900 Woodward Avenue, Suite 350

**CITY:** Bloomfield Hills     **STATE:** MICHIGAN     **POSTAL CODE:** 48304     **COUNTRY:** United States

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

All commercial and personal assets of the Debtor, whether now owned or hereafter acquired.

**FILING TYPE**

Transmitting Utility: No

Public Finance: No

Manufactured Home: No

Agriculture Lien: No

Non-Ucc Filling: No

**ALTERNATIVE DESIGNATION**

Lessee/Lessor: No

Consignee/Consignor: No

Seller/Buyer: No

Bailee/Bailor: No

Licensee/Licensor: No

**OPTIONAL FILER REFERENCE DATA:**

To be filed with the Ohio Secretary of State C/M: 13848.23040 Document No. 1838371

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF MICHIGAN (Detroit)

Bankruptcy Petition No. 25-46017-tjt

Chapter 7

Voluntary

No Asset

Assigned to Trustee Wendy Turner Lewis

_____/

PAGES 1 -24

    Transcription of audio-recorded

    341 CREDITORS' HEARING

    held on Thursday, August 21, 2025


-SPEAKING ON AUDIO FILE-

RODNEY M. GLUSAC

    As Trustee handling docket for Wendy Lewis Turner

RONALD S. SIEGEL

    Appearing on behalf of Debtor

ANTHONY J. KOCHIS

    Appearing on behalf of the Creditor Northstar Partners

ALEX ARMSTRONG

    Appearing on behalf of the Creditor FIS 1 Tenant, LLC

PAUL SYRING

    Appearing on behalf of the City of Toledo, Ohio

1

PATRICIA FEDEWA

     Appearing on behalf of the National Labor Relations Board

BRANDON WRIGHT

     Appearing on behalf of the National Labor Relations Board


     Transcribed By:  Eileen S. Higer, CSMR/CER 5018
                        Certified Court Reporter
                        Higer Court Reporting
                        (248) 514-3210

2

1

2                    -    -    -

3          MS. LEWIS:  Calling case number 25-46017,

4     Matthew Buchard.

5          MR. SIEGEL:  Hi, Wendy.  It's Ron Siegel.  Do

6     you mean Buskard?

7          MS. LEWIS:  I do mean Buskard.  Okay.  All

8     right.  And I won't forget that one.

9          Okay.  All right.  We've got a lot of people on

10    this call.  So we're going to keep it moving.  This is a

11    second -- I believe it's a second adjourned hearing for

12    this case.  First.  No, there was one adjourned hearing

13    before.  It was adjourned to today.

14         Okay.  All right.  That's fine.  And we've got

15    all the schedules, right, Mr. Siegel?  We've got

16    everything in place now.

17         MR. SIEGEL:  Okay, great.  Yeah.  Thank you.

18    And the debtor is here.

19         MS. LEWIS:  Where is the debtor?  There he is.

20         Okay.  All right.  So we've got everybody in

21    here and Rod Glusac is here.  He's representing me, so

22    he'll ask those questions.

23         All right.  And so let me swear you in, sir.

24    Raise your right hand for me, please.  Do you solemnly

25    swear or affirm to tell the whole truth and nothing but

3

```
 1   the truth?

 2              MR. BUSKARD:  Yes.

 3              MS. LEWIS:  Thank you.  And your full name for

 4   the record is?

 5              MR. BUSKARD:  Matthew Ryan Buskard.

 6              MS. LEWIS:  And your address, please, sir.

 7              MR. BUSKARD:  It is 24650 West Hampton Street,

 8   Oak Park, Michigan, 48237.  And I just moved to a

 9   different address if you'd like that as well.

10              MS. LEWIS:  Yeah.  Well, that's not what's on

11   here.  So that's a new address, so you've got a new one

12   after that one.  Is that correct?

13              MR. BUSKARD:  That's my old one.  But it's 22620

14   Woodward Avenue, Unit D, Ferndale, Michigan, 48220.

15              MS. LEWIS:  Okay.  Yeah.  That's the one that I

16   have.  Okay.  And based upon this Chapter 7 bankruptcy

17   proceeding, you have listed everything that you own as

18   well as everyone you owe monies to, sir.  Is that

19   correct?

20              MR. BUSKARD:  To the best of my knowledge, yes.

21              MS. LEWIS:  Should there be any corrections,

22   changes, or amendments on your petition?

23              MR. BUSKARD:  I do not believe so.

24              MS. LEWIS:  All right.  And do you -- well, I'll

25   let Rod ask any of those questions.
```

4

```
 1                    Mr. Siegel, please place your name on the
 2        record.
 3                    MR. SIEGEL:  Ronald Siegel on behalf of and with
 4        Mr. Buskard.
 5                    THE COURT:  Thank you.  And there's a lot of
 6        people here.  I want to make sure; I'm going to put your
 7        names and who you represent on the record, please.  And
 8        we'll start with you, Rod.
 9                    MR. GLUSAC:  Sure.  Rodney Glusac on behalf of
10        trustee.
11                    MS. LEWIS:  Thank you.
12                    And Mr. Siegel, you've placed your name on the
13        record.
14                    Anthony, is it Kochis?
15                    MR. KOCHIS:  Yeah.  Kochis.  Good morning.
16        Anthony Kochis; Wolfson Bolton Kochis, PLLC on behalf of
17        Northstar Partners.
18                    MS. LEWIS:  Thank you.  And then there's an Alex
19        Armstrong.  I'm just going to go across the line here and
20        then come back to you, Felix.
21                    MR. ARMSTRONG:  Good morning, everyone.  Alex
22        Armstrong, Dade Stroud and Kleinman on behalf of FIS 1
23        Tenant, LLC.
24                    MS. LEWIS:  Thank you.  And Felix Herreras.  Is
25        that it?  You have to unmute for me, please, Felix.  You
```

5

```
 1       see the little -- hold on.  Let me see if I can -- do you

 2       see it?  I'm hitting that ask to unmute.  No?  Oh, there

 3       you go.  Okay.  Go ahead.

 4               MR. HERRERA:  I need to translate to Spanish,

 5       please.

 6               MS. LEWIS:  Oh, that's fine.  You're a creditor?

 7       Are you a creditor?  Does he owe you money?

 8               Mr. Siegel, do you know who this is?

 9               MR. SIEGEL:  No, I don't.

10               Matt, do you know who this is?

11               MS. LEWIS:  Okay.  Matt, you're going to have to

12       unmute, please.

13               MR. BUSKARD:  Yes, I have no idea who Felix is.

14               MS. LEWIS:  Are you -- sir, are you here for

15       your case?

16               That's what I think he is.  He's unmuted.

17       That's what it is.  And he needs a Spanish interpreter, so

18       we're going to keep going on that one.  All right.  All

19       right.

20               And Paul?

21               MR. SYRING:  Yes.  Good morning.  Paul Syring,

22       General Counsel, City of Toledo, Ohio, on behalf of the

23       City of Toledo, Ohio.

24               MS. LEWIS:  Thank you.  Are there any other

25       persons that are here on this case?
```

6

```
 1                    MS. FEDEWA:  Yes, Ms. Lewis.  My name is

 2        Patricia Fedewa.  I'm with the National Labor Relations

 3        Board.

 4                    MS. LEWIS:  Thank you.  Anyone else?

 5                    MR. WRIGHT:  Yes, Madam Trustee  I'm having some

 6        camera issues, so I'm not able to turn it on.  But I'm

 7        Brandon Wright with the NLRB, assisting attorney Fedewa.

 8                    MS. LEWIS:  Thank you.  All right.  I'm making

 9        sure that everyone who is on this call, you make sure you

10        place an appearance on the record in reference to this

11        court file, so that if we need to talk to you, we have

12        contact information.  That's very important.

13                    All right.  Okay, Rod, take it from here.

14                    MR. GLUSAC:  Well, Mr. Buskard, maybe I'm losing

15        something, but were you just sworn in or not?

16                    MR. BUSKARD:  I was.

17                    MR GLUSAC:  You were?  Okay, then I am losing

18        it.

19                    So have you owned any real estate within the

20        last six years?

21                    MR. BUSKARD:  Yes.

22                    MR. GLUSAC:  Okay.  Now, you listed on your

23        schedules the property in Tustin, Michigan that the

24        trustee just sold.  Have you owned any other real estate?

25                    MR. BUSKARD:  No.

                                   7
```

| | |
|---|---|
| 1 | MR. GLUSAC:  So no interest in any timeshares, a |
| 2 | vacation property, vacant land, nothing like that? |
| 3 | MR. BUSKARD:  Nothing. |
| 4 | MR. GLUSAC:  No interest with family members or |
| 5 | perhaps parents? |
| 6 | MR. BUSKARD:  No. |
| 7 | MR. GLUSAC:  Okay.  Do you have the right to sue |
| 8 | anybody for any reason? |
| 9 | MR. BUSKARD:  No, not currently. |
| 10 | MR. GLUSAC:  So you said not currently.  Did you |
| 11 | at one time have cause of action against anyone? |
| 12 | MR. BUSKARD:  There is a future potential |
| 13 | defamation case, yes. |
| 14 | MR. GLUSAC:  Okay.  And so whom would that be |
| 15 | against? |
| 16 | MR. BUSKARD:  I don't have liberty to say that |
| 17 | right now as we're just exploring it. |
| 18 | MR. GLUSAC:  Well, any claim that you may have |
| 19 | is property of your bankruptcy of estate to be |
| 20 | administered by the trustee.  So yes. |
| 21 | MR. BUSKARD:  And if it moves forward, we would |
| 22 | easily provide all of that information. |
| 23 | MR. GLUSAC:  I appreciate that, but I think we |
| 24 | need that information now. |
| 25 | MR. BUSKARD:  Okay. |

8

```
 1                    MR. SIEGEL:  You really do need to tell them,
 2       Matt.
 3                    MR. BUSKARD:  Okay.  So there have been several
 4       online statements from somebody represented specifically
 5       on this call that have been outright plain old lies.  So
 6       I'm exploring a potential defamation lawsuit for that to
 7       recoup funds.
 8                    MR. SIEGEL:  Rod, if you may, may I ask one
 9       thing?
10                    Matt, were these statements made -- are these
11       alleged statements made before or after this bankruptcy
12       case was filed?
13                    MR. BUSKARD:  After.
14                    MR. SIEGEL:  Okay.  So they may not be property
15       of the estate then.
16                    MR. GLUSAC:  Okay.  To whom are you speaking
17       about these claims?
18                    MR. BUSKARD:  I don't know if I would like to
19       share that right now.  I could share that privately with
20       you, if that's appropriate.
21                    MR. GLUSAC:  Is it an attorney?
22                    MR. BUSKARD:  No.  Gosh, no.  No, it's not an
23       attorney.  It's one of the attorney's clients.
24                    MR. GLUSAC:  Okay.  I guess I'm not following.
25       We can discuss that later so we can continue.  Thank you.
```

9

```
 1                    Have you sold any property in the last six years
 2        of any value greater than $5,000?
 3                    MR. BUSKARD:  No.
 4                    MR. GLUSAC:  You've listed an interest in many
 5        corporations, correct, and LLCs on your schedules?
 6                    MR. BUSKARD:  Correct.
 7                    MR. GLUSAC:  Okay.  Are any of those
 8        corporations or LLCs operating at this time?
 9                    MR. BUSKARD:  No.
10                    MR. GLUSAC:  And were all of them related to
11        either real estate or restaurant properties?
12                    MR. BUSKARD:  Yes.
13                    MR. GLUSAC:  Okay.  Did you have any partners or
14        shareholders in any of those corporations or LLCs?
15                    MR. BUSKARD:  Yes.
16                    MR. GLUSAC:  Okay.  We can talk about that
17        later.    You know, did you provide the trustee with the
18        documents that were required for this 341 meeting?
19                    MR. BUSKARD:  Yes.
20                    MR. GLUSAC:  Okay.  So I have not reviewed those
21        yet.  So what I think I'd like to do is review those and
22        then probably schedule a 2004 examination and also have it
23        open to any other creditors here that wish to attend.  So
24        I guess I'd like to -- I'll just move on to whomever would
25        like to go next.
```

10

```
 1                MS. LEWIS:  Anyone have any questions?  Or you
 2         guys, go ahead.
 3                MR. KOCHIS:  I do.
 4                MS. LEWIS:  Okay.  Thank you.  Go ahead.
 5                MR. KOCHIS:  Good morning, Mr. Buskard.  Anthony
 6         Kochis.  I represent Northstar Partners, LLC.
 7                Do you happen to have your schedules that you
 8         filed in front of you?  It's ECF number 19.
 9                MR. BUSKARD:  No.
10                MR. KOCHIS:  Okay.  Well, let's maybe do it this
11         way then.  So you mentioned property 24650 West Hampton
12         Street.  What was the nature of your interest in that
13         property?
14                MR. BUSKARD:  I have no interest in that
15         property.
16                MR. KOCHIS:  Well, you did at one time.  You
17         used to live there.  Am I correct?
18                MR. BUSKARD:  Correct, but I wasn't on the
19         mortgage, the deed, nothing.  I was just an occupant
20         there.
21                MR. KOCHIS:  An occupant.  Okay.
22                Your schedules with respect to question number
23         eight, collectibles of value, examples, antiques,
24         figurines, paintings, other artwork lists none.  Is that
25         accurate?
```

11

```
 1                    MR. BUSKARD:  Yes.

 2                    MR. KOCHIS:  Have you owned artwork in the

 3      past?

 4                    MR. BUSKARD:  I mean, yeah.

 5                    MR. KOCHIS:  What happened to it?

 6                    MR. BUSKARD:  I mean, it's -- some of it is in

 7      this room.  It's less than $100 in value.

 8                    MR. KOCHIS:  So the artwork that you own

 9      currently is less than $100 in value.  Am I understanding

10      that correctly?

11                    MR. BUSKARD:  Yeah.  They're reprints from a

12      site called Society6, and then one was gifted to me by my

13      partner, and it holds no value.

14                    MR. KOCHIS:  All right.  Have you owned artwork

15      previously other than the artwork you're describing?  I'm

16      sorry.  What was the answer?

17                    MR. BUSKARD:  The answer is no.

18                    MR. KOCHIS:  All right.  Your schedules list

19      North Star Partners as holding an unsecured claim in the

20      amount of $95,000.  How did you determine the $95,000

21      amount?

22                    MR. BUSKARD:  I did not determine it.  I think

23      it was provided by them.

24                    MR. KOCHIS:  All right.  You also listed it as

25      an unsecured claim.  What's the basis for listing it as an
```

                                    12

```
 1    unsecured claim?

 2              MR. BUSKARD:  I have no idea.  I don't know the

 3    difference.  I'm not an attorney.

 4              MR. KOCHIS:  All right.  Do you recall executing

 5    a security agreement in connection with the loan from

 6    North Star Partners?

 7              MR. BUSKARD:  I recall that there were several

 8    documents.  I don't know if it was a security agreement.

 9    I could look it up and look at it.

10              MR. KOCHIS:  All right.  The security agreement

11    that you executed in favor of North Star Partners

12    references personal property, including artwork, with a

13    minimum value of $450,000.  Have you in the past owned

14    personal property, including artwork, that has a value of

15    $450,000?

16              MR. BUSKARD:  No.

17              MR. KOCHIS:  There are a number of LLCs that Mr.

18    Glusac asked you about that are referenced.  Some of them

19    are listed on your petition as a sole proprietorship.

20              MR. BUSKARD:  Yeah.

21              MR. KOCHIS:  But when I look at them, they all

22    appear to be limited liability companies.  So my question

23    is, are these limited liability companies or are these

24    sole proprietorships?

25              MR. BUSKARD:  They're all LLCs owned by one
```

13

```
1       singular person, except for in the case of Bobcat,

2       Ferndale and two others.

3                   MR. KOCHIS:  Okay.  So the reference to these

4       being sole proprietorships, that is not correct?

5                   MR. BUSKARD:  I wouldn't -- I wouldn't know.  I

6       have the CPA file all that stuff.

7                   MR. KOCHIS:  But your understanding is that

8       they're limited liability companies?

9                   MR. BUSKARD:  Yes, that's how they operated, as

10      LLCs.

11                  MR. KOCHIS:  And with respect to all of the

12      limited liability companies that you have listed an

13      interest in, none of them are currently operating?

14                  MR. BUSKARD:  Correct.

15                  MR. KOCHIS:  All right.  Do any of them have

16      assets?

17                  MR. BUSKARD:  No.

18                  MR. KOCHIS:  Did they previously have assets?

19                  MR. BUSKARD:  At one point, yes.

20                  MR. KOCHIS:  All right.  What was the point in

21      time in which the LLCs did not have assets?

22                  MR. BUSKARD:  When they closed, a lot of the

23      landlords took over those assets, tables, chairs,

24      equipment, et cetera.

25                  MR. KOCHIS:  So what's the ballpark time frame
```

14

```
 1     of when you're talking about these LLCs closing?

 2            MR. BUSKARD:  All of our operations ceased the

 3     very last day of May.

 4            MR. KOCHIS:  2025?

 5            MR. BUSKARD:  Yes.

 6            MR. KOCHIS:  Got it.  All right.  I'm going to

 7     reserve my right on a Rule 2004, but that's all I have

 8     right now.

 9            MS. LEWIS:  Thank you.  Anyone else have any

10     quick questions?

11            MR. SYRING:  I do.

12            MS. LEWIS:  Go ahead.

13            MR. SYRING:  Paul Syring, City of Toledo,

14     General Counsel on behalf of the City of Toledo.

15            Is it Mr. Buskard, correct, the debtor?

16            MR. BUSKARD:  Yep.

17            MR. SYRING:  Mr. Buskard, do you recall an

18     entity named Bonnie's Toledo, LLC?

19            MR. BUSKARD:  Yeah, that was a location that we

20     explored with the developer of the property.

21            MR. SYRING:  And you say we, who is we?

22            MR. BUSKARD:  Myself and the folks who owned the

23     property, Ford Industry Square.

24            MR. SYRING:  So the equity interest holders of

25     Bonnie's Toledo, LLC is whom?
```

15

```
 1              MR. BUSKARD:  I would assume them because we
 2      didn't put anything forward into it.
 3              MR. SYRING:  So you did not form Bonnie's
 4      Toledo, LLC?
 5              MR. BUSKARD:  No, we did.
 6              MR. SYRING:  Again, we is whom?
 7              MR. BUSKARD:  Myself.
 8              MR. SYRING:  So we is you.  You say we, that's
 9      plural.
10              MR. BUSKARD:  Yes.
11              MR. SYRING:  But it's not plural.  It's you
12      singularly, correct?
13              MR. BUSKARD:  Correct.
14              MR. SYRING:  So you were the sole organizer of
15      Bonnie's Toledo, LLC?
16              MR. BUSKARD:  Yes.
17              MR. SYRING:  And do you recall when that was
18      organized?
19              MR. BUSKARD:  I do not.  I would have to look it
20      up.
21              MR. SYRING:  Okay.  Do you recall Bonnie's, LLC
22      receiving a loan from the city of Toledo, an economic
23      development loan?
24              MR. BUSKARD:  Yes, that was something that was
25      applied for by us in conjunction with the property
```

16

```
1        developer, Ford Industry Square.

2                MR. SYRING:  Okay.  And you say us.  Again,

3        that's -- I think of a plural when I hear the word us.

4        Who is the us?

5                MR. BUSKARD:  So the us is, again, myself and

6        then Ford Industry Square, who's the developer of the

7        property, who actually filled out the application and

8        collected a lot of the information for us.

9                MR. SYRING:  Would that involve a gentleman by

10       the name of Prater?  Last name Prater?

11               MR. BUSKARD:  Correct.  Kevin Prater.  Yes.

12       Kevin Prater.

13               MR. KOCHIS:  Do you recall the amount of that

14       loan?

15               MR. BUSKARD:  I would have to look it up, but I

16       want to say it was 80,000.

17               MR. SYRING:  If I told you 100,000, would you

18       agree with me?

19               MR. BUSKARD:  Yes.

20               MR. SYRING:  Do you recall the date of that

21       loan?

22               MR. BUSKARD:  I do not.  I would have to look it

23       up, unfortunately.

24               MR. SYRING:  Do you recall executing and

25       delivering to the lender, the city of Toledo, an
```

17

1    unconditional cognovit guaranty in the amount of the loan
2    of $100,000?
3              MR. BUSKARD:  If it was in that packet of
4    information that I signed, maybe.  Yeah, I would have to
5    look it over.
6              MR. SYRING:  Okay.  I'm not sure if the city of
7    Toledo is listed as a creditor in your petition.  Do you
8    know if they are or not?
9              MR. BUSKARD:  I don't know off the top of my
10   head.  I would have to refer to my attorney for that.
11             Mr. Siegel, could you answer that quickly for
12   us, administratively?
13             MR. SIEGEL:  I don't know off the top of my
14   head.  If you want, I'll look it up right now.
15             MR. SYRING:  Please do.
16             MR. GLUSAC:  Mr. Syring, I hate to interrupt,
17   but I just looked at the schedules and Statement of
18   Financial Affairs, and I do not see the City of
19   Toledo being listed as a creditor.
20             MR. SYRING:  Okay.  I --
21             MR. GLUSAC:  There's interest in that LLC that
22   you were just describing, but not the City of Toledo as a
23   creditor.
24             MR. SYRING:  Just a few more questions.  I
25   appreciate everyone's patience.  I understand there's

                              18

```
1      other matters and people want to be heard today.

2                  Mr. Buskard, the $100,000 in loan proceeds, do

3      you recall what happened to those funds?

4                  MR. BUSKARD:  Those funds were used to start the

5      build-out process in conjunction with the developer.  So

6      heating and cooling, wall, electrical.  I believe that

7      there's a giant walk-in cooler and freezer in the space

8      and stuff like that.

9                  MR. SYRING:  And that location never did launch

10     or open for servicing customers?

11                 MR. BUSKARD:  Correct.

12                 MR. SYRING:  And the entirety of the $100,000

13     were spent on making improvements --

14                 MR. BUSKARD:  Correct.

15                 MR. SYRING:  -- to that space in anticipation of

16     opening?

17                 MR. BUSKARD:  Correct.

18                 MR. SYRING:  And did you come into physical

19     possession of any of those funds?

20                 MR. BUSKARD:  I would have to double check.  I

21     can't remember if we did, if the LLC did, or if it went

22     directly to the developer.  I would have to double check.

23                 MR. SYRING:  Okay.  Final question, and I want

24     to make sure I'm clear.  You keep referencing things as a

25     we.  And I understand Bonnie's Toledo, LLC is a sole
```

19

```
 1    member LLC and you were that member?

 2               MR. BUSKARD:  Correct.

 3               MR. SYRING:  So when you say we, who are you

 4    referring to?

 5               MR. BUSKARD:  Again, myself.  I'm sorry that I

 6    keep using we in reference to a former company that I

 7    owned.  But it's still, again, as on record, just myself.

 8               MR. SYRING:  Okay.  Thank you.

 9               I would like to reserve any further questions

10    for any future hearings.  And I'll yield the rest of the

11    time.  Thank you.

12               MS. LEWIS:  Thank you.  Anyone else, quickly?

13    Yes.

14               MS. FEDEWA:  Thank you, Ms. Turner.  This is

15    Patty Fedewa from the National Labor Relations Board.  And

16    Mr. Buskard, one of the co-debtors you've listed is Bobcat

17    Bonnie Enterprises, LLC.  Is that correct?

18               MR. BUSKARD:  I believe so, yes.

19               MS. FEDEWA:  Okay.  And did they have gross

20    receipts in excess of $500,000 in 2024?

21               MR. BUSKARD:  I would have to check, but

22    potentially, yes.

23               MS. FEDEWA:  Okay.  Would it be typical for them

24    just, I mean, to run your business to have gross receipts

25    in excess of $500,000?
```

20

```
 1              MS. FEDEWA:  It's a little different because we

 2      had switched CPA companies.  And at the guidance of our

 3      CPA and attorney, we were moving over to the enterprise

 4      concept as an umbrella LLC for our operations.  So I

 5      wouldn't be able to tell you until I've looked

 6      specifically, but potentially, yes.

 7              MS. FEDEWA:  Okay.  And there are currently NLRB

 8      charges against Bobcat Bonnie's Enterprises, LLC; is

 9      that correct?

10              MR. BUSKARD:  Nope.  It's against 200 West

11      Michigan Avenue LLC, Bobcat Bonnie's, Ypsilanti.

12              MS. FEDEWA:  Okay.  And Bobcat -- so Bobcat

13      Bonnie's, Ypsilanti, did they have over $500,000 in gross

14      receipts in 2024?

15              MR. BUSKARD:  Yes.

16              MS. FEDEWA:  Okay.  And how were you paid

17      through -- what was the process for being paid at the

18      Bobcat Bonnie's, Ypsilanti?

19              MR. BUSKARD:  They got biweekly checks.

20              MS. FEDEWA:  How were you paid?

21              MR. BUSKARD:  I was not paid from that

22      location.  That location lost money every single year in a

23      dramatic fashion.

24              MS. FEDEWA:  Did you ever give or take loans

25      from that location, Ypsilanti?
```

21

```
 1              MR. BUSKARD:  I would have to double check.

 2     There might be something with the SBA through a COVID

 3     program.  I would need to double check.  I don't want to

 4     give you false information.

 5              MS. FEDEWA:  Okay.  And how about you,

 6     personally?  Did you ever personally give or take loans

 7     from that location?

 8              MR. BUSKARD:  Not to me personally.  I had

 9     loaned money to employees here and there as needed.

10              MS. FEDEWA:  Okay.  And how about to Bobcat

11     Bonnie's Enterprises?  Did you ever give or take loans

12     from that entity?

13              MR. BUSKARD:  I don't think so.  Not in regards

14     to that.  No, I don't think so.

15              MS. FEDEWA:  Okay.  And did you have a separate

16     bank account from those locations?

17              MR. BUSKARD:  Yes.  For a while we did.  And

18     then when we got the new CPA who suggested us doing this

19     whole reorganization, everything moved to just the one

20     bank account.

21              MS. FEDEWA:  One bank account for all the

22     companies?

23              MR. BUSKARD:  Yes.

24              MS. FEDEWA:  Okay.  And so one bank account for

25     all the -- and did you, yourself, have a separate bank
```

account from that group?

MR. BUSKARD:  Yes.  Yep.  My personal finances were separated.

MS. FEDEWA:  Okay.  All right.  I think those are -- I reserve future questions for a future hearing. But I would just want to know, Mr. Buskard, that during an NLRB investigation, that doesn't stop during a bankruptcy, and it is against the company and not directly against you.  So you really do need to participate.  Thank you.

MS. LEWIS:  Thank you.  Anyone else?  Going once.  Go ahead.

MR. SIEGEL:  Very quickly, Madam Trustee.  No questions at this time.  But I would like to put on the record, I will reserve the right to ask questions at future hearings or other events.

MS. LEWIS:  We appreciate that.

And just making sure that everyone does do a notice in the file.  It's very important so we know who each and every creditor is, and we can certainly get in touch with you.  As Mr. Glusac has indicated, he's going to conduct a 2004 examination of the debtor after we have reviewed the documentation.  And each and every one of you who is on that notice will certainly get information concerning the same and you can participate.  That way everyone can ask the questions at the same time.  All

23

```
 1    right?

 2                    I think, Rod, are we good?

 3                    MR. GLUSAC:  Sounds good.

 4                    MS. LEWIS:  All right, guys.  Thank you so much.

 5    Appreciate it.

 6                    Thank you, Mr. Siegel.

 7                    MR. SIEGEL:  Have a good day.

 8                    MS. LEWIS:  All right, you too.

 9                    MR. KOCHIS:  Thank you.  We have a quick

10    question before we wrap on that prior case.

11                    MS. LEWIS:  Rod?

12                    MR. KOCHIS:  Is there an estimated time when

13    that next hearing will occur?

14                    MS. LEWIS:  Rod?

15                    MR. GLUSAC:  Yes.  I'll look at my schedule.

16    And if you could also send me an email, anyone that wants

17    to participate.  And we'll get a convenient date and move

18    forward.

19                    MR. KOCHIS:  Could you rough it in?  Thirty

20    days?  Sixty days?

21                    MR. GLUSAC:  Oh, probably.  Definitely within 30

22    days, yeah.

23                    MR. KOCHIS:  Okay.  Fair enough.  Thank you.

24                    MR. GLUSAC:  Thank you, everyone.

25                    (The 341 hearing concluded.)
```

24

CERTIFICATE OF REPORTER

STATE OF MICHIGAN    )

                     )  SS

COUNTY OF OAKLAND    )


      I certify that this transcript, consisting of 24

pages, is a true, accurate and complete

transcription, to the best of my ability, of said

audio recording.

This certified reporter accepts no responsibility for

any events that occurred during the above

proceedings, for any inaudible and/or indiscernible

responses by any person or party involved in the

proceedings, or for the content of the recording

provided.


*Eileen Higer*          /
_____
Notary Public
/s/  Higer Court Reporting
(248) 514-3210
My Commission Expires:  09/07/2027

25